To: Director, Office of Information Policy, US DoJ

From: Doug Thompson, reporter, Northwest Arkansas Democrat-Gazette newspaper

In Re: Administrative appeal of determination in FOIPA request No. 1557725-000 regarding Robert Cessario

Greetings.

My request was denied citing exemptions, 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). These, of course, regard "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" and "reasonably be expected to constitute an unwarranted invasion of personal privacy."

To recap, while he was a special agent Mr. Cessario destroyed evidence by wiping the hard drive of an FBI laptop used to gather evidence in an investigation. The investigation in question convicted six Arkansas state lawmakers of public corruption. Mr. Cessario's conduct resulted in court hearings in which the presiding U.S. District Judge called his conduct "reprehensible" and both the judge and assistant U.S. Attorneys prosecuting the corruption case called his given reason for the two wipes unbelievable. He will plead guilty to charges arising from this matter on Jan. 5.

Mr. Cessario's actions are, to my knowledge, the most egregious conduct by a federal agent in Arkansas to ever become public. I am at a loss to imagine how the public's right to know could outweigh "privacy concerns" if not in this case.

Resolution of Mr. Cessario's case took three years and nine months after the April 2018 court hearing regarding his conduct in United States of America vs. Jonathan Woods 5-17-CR-50010-TLB-1. Evidence by FBI forensic investigators of the computer hardware was given at that hearing. There is clear compelling public interest in what took so long to resolve this matter. Hence my request for "the findings and final recommendations of charges in the investigation of FBI Special Agent Robert Cessario."

I am also at a loss to see why my request for Cessario's last day of work for the FBI is considered a matter of privacy. How long did he remain on the bureau's payroll after admitting to destruction of evidence? Was he the subject of any disciplinary action while he remained in bureau employ? Did his retention make him eligible for a pension, or for more benefits from a pension? Surely the public's interest in these matters is self-evident.



Sent
12-22-22



EXHIBIT D