IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DOUG THOMPSON and )
LISA THOMPSON, )
)
              Plaintiffs )
)
v. )       Case No. 5:24-cv-05145 - TLB
)
FEDERAL BUREAU OF )
INVESTIGATION, )
)
             Defendant. )

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Doug Thompson and Lisa Thompson ("Plaintiffs"), in opposition to the motion for summary judgment of defendant, Federal Bureau of Investigation ("FBI"), (ECF 17), state:

### I.     Introduction

Plaintiffs made a proper FOIA request to FBI, and FBI violated the FOIA by failing to make, and share with Plaintiffs, a timely "determination" regarding the request. ECF 2, ¶¶20-21. FBI also violated the FOIA in originally responding to the request, by claiming then, wrongly, that all responsive documents were exempt from disclosure and "would constitute an unwarranted invasion of personal privacy". *Id*., ¶¶10, 22-23. FBI then, after reversing its contention that all responsive documents were exempt from disclosure, violated the FOIA in failing to make the requested records promptly available. *Id*., ¶¶24-25.

Plaintiffs filed suit. Four months later, after conducting a Case Management Hearing, the Court entered a Case Management Order ("CMO"). ECF 11. Among FBI's obligations pursuant

1

to the CMO were to make monthly productions of a subset of approximately 1,200 pages of documents, provide a *Vaughn* index by March 31, 2025, and "provide Plaintiffs with categorical descriptions of the remaining roughly 2,500 pages of documents in the broader set of potentially responsive materials." *Id*. By January 22, 2026, FBI had provided a final *Vaughn* index referencing 1,211 pages "processed," and produced 816 pages in full and 332 pages in part, while withholding 63 pages. ECF 18-1, ¶4. FBI has not provided information regarding the "roughly 2,500 pages of documents in the broader set of potentially responsive materials".

Several overarching questions regarding FBI's scope of compliance with the FOIA could be answered if FBI would agree to the Court's *in camera* review of unredacted copies of all 1,211 pages referenced in FBI's *Vaughn* index. *See e.g.*, ECF 13, p. 19 of 36, ln. 15-22; *also see* 5 U.S.C.A. § 552(a)(4)(B). But, at least at this point, FBI is not agreeing to "allow that to happen". *Id*.; *cf*. ECF 18-1, p. 16 of 176, fn. 10. Such a review could reveal the extent of FBI's failure to comply with the FOIA in responding to Plaintiffs' August 18, 2022 request for records regarding the findings and final recommendation of charges in the investigation of Robert Cessario; any disciplinary action taken against Mr. Cessario; when Mr. Cessario left the employment of FBI; and, whether Mr. Cessario draws a pension from FBI.

Plaintiffs can prove FBI's violation of the FOIA, and therefore FBI's motion for summary judgment should be denied. Furthermore, FBI's claim to have "conducted a reasonable search designed to locate any responsive records and have released all reasonably segregable, non-exempt materials to Plaintiffs" is dubious, considering FBI's apparent misunderstanding of the topics in the FOIA request; its decisions regarding exemptions application; and, its failure to account for, at a minimum, another 2,500 pages of potentially responsive materials.

Accordingly, FBI's motion should be denied.

## II. Discussion

More than six years ago, then-FBI Special Agent Robert Cessario was a co-lead case agent in the investigation and prosecution of three defendants in *United States v. Woods*, USDC-WDAR, case number 5:17-CR-50010. ECF 13, pp. 4 (ll. 14-15) and 22 (ll. 20-21) of 36. In the course of *Woods*, Mr. Cessario – while employed by FBI – wiped his laptop after being instructed to deliver it to FBI's Little Rock office for a forensic examination. Mr. Cessario subsequently gave testimony, about why, that "simply wasn't believable". ECF 13, p. 6 of 36, ll. 18-19; *also see United States v. Woods*, 319 F. Supp. 3d 1124, 1146 (W.D. Ark. 2018). Years later, Mr. Cessario was sentenced to 36 months of probation and ordered to pay a $25,000 fine for "one count of corruptly destroying an object with the intent to impair its integrity and availability for use in an official proceeding". *See* https://oig.justice.gov/news/press-release/former-fbi-special-agent-sentenced-corrupt-destruction-object-official.

On August 18, 2022 – four years after Mr. Cessario wiped his computer and gave testimony that was not credible, but before his sentencing – Plaintiffs submitted an August 18, 2022 FOIA request for records regarding four topics. ECF 2, ¶8. Plaintiffs' FOIA request seeks records of (i) findings and final recommendations of charges in the investigation of, (ii) disciplinary action taken against, (iii) last date of employment of, and (iv) whether a pension is drawn by, Mr. Cessario. ECF 2-1, p. 3 of 4. In the FOIA request, Plaintiffs provided justification for expedited processing. Ex. 1, ¶3.

FBI's initial response to the August 18, 2022 FOIA request was untimely. Ex. 1, ¶4; ECF 2, ¶¶8-10; ECF 19, ¶¶3-4. FBI's subsequent response was a complete denial of Plaintiffs' FOIA request. ECF 2, ¶11. After Plaintiffs' timely administrative appeal, intervention of a United States senator, and more than 18 months, FBI advised in April 2024 that it would take 67 months to

process Plaintiffs' request. *Id.*, ¶12-15. This was based on FBI's reporting it "located approximately 3783 pages potentially responsive to [Plaintiffs'] request". ECF 2-8, p. 1 of 2. The following month, by letter dated May 2, 2024, FBI reported it had "located approximately 32,471 pages of records" that are "potentially responsive" to the August 18, 2022 FOIA request. ECF 18-1, p. 67 of 176.

This litigation was commenced July 15, 2024. ECF 2. A Case Management Hearing was conducted November 14, 2024. ECF 13. At the Hearing, no mention of the 32,471 pages of "potentially responsive" records was made. FBI's Mike Seidel stated at the Hearing that, of the approximately 3,700 "potentially responsive" documents identified by FBI as of April 2024, "comprehensive summaries of both FBI records and Department of Justice OIG records are about 1,200 pages." ECF 13, TR 15-16. Mr. Seidel explained that "we believe what the requesters are seeking are the summary documents of the findings and recommendations of what the FBI did in response to Mr. Cessario". ECF 13, pp. 15 (ll. 18-25) and 16 (ll. 1-9) of 36.

Plaintiffs did not, as asserted by FBI in its motion briefing, agree "to a subset of 1,211 pages" as satisfying the FOIA request. ECF 18, p. 3 of 29, and ECF 19, ¶12; *cf.*, ECF 13, pp. 28 (ll. 7-25) and 29 (l. 1) of 36. In fact, at the Hearing, Plaintiffs' counsel stated:

> The only thing I would do is point out to the Court
> that I appreciate the FBI saying, this is what we think the
> plaintiffs want. I just want to make sure that no one is
> under the misimpression that we are somehow agreeing to the
> FBI's decision to reduce from 3,783 approximate pages that
> are potentially responsive now to 1,200 pages that are
> potentially responsive. I mean, there's still a delta there
> of 2,583 pages.
>
> I presume there will be an explanation given as to
> what the difference is in the 1,200 pages that come versus
> what had previously been identified. But that's really the
> only sort of emphasis that I want to put right now. I just
> don't want anyone to be left with the misimpression that,

oh, yeah, we think that the universe is 1,200 pages.

ECF 13, p. 28 of 36, ll. 10-23.

In response, FBI asserted: "We're not cutting them off at the knees at those 1,200. That's our starting point and we're hoping that that's the correct subset of documents." ECF 13, p. 32 of 36, ll. 2-15.

The Court then entered the CMO, instructing FBI to make monthly productions of a subset of approximately 1,200 pages of documents, provide a *Vaughn* index by March 31, 2025, and "provide Plaintiffs with categorical descriptions of the remaining roughly 2,500 pages of documents in the broader set of potentially responsive materials." ECF 11.

Plaintiffs thereafter received FBI letters dated:

- December 31, 2024 (reporting release of 0 of 500 reviewed pages; the letter had an enclosure of 10 pages, but no responsive pages);

- January 31, 2025 (reporting release of 304 of 500 reviewed pages; the disc/enclosure had 790 pages, of which 736 were unredacted pages of a Jan. 25, 2018 evidentiary hearing in the U.S. District Court, Western District of Arkansas, and of the other 44 pages, 35 are redacted at least partially;

- February 28, 2025 (reporting release of 6 of 211 reviewed pages; the disc/enclosure had 6 pages, all of which were redacted at least partially);

- March 31, 2025 (reporting release of 88 of 88 reviewed pages; the disc/enclosure had 88 pages, 83 of which were redacted at least partially);

- June 6, 2025 (reporting release of 89 of 89 reviewed pages; the disc/enclosure had 89 pages, 76 of which were redacted at least partially);

- August 29, 2025 (reporting that this is the "final production of the documents which were initially sent to OIG for consultation"; there is no mention in the letter of the number of pages reviewed or released, although the disc/enclosure had 6 pages but no responsive pages); and,

- February 12, 2026 (reporting on a supplemental release of the records previously provided by letters of February 28, 2025 and March 31, 2025; the disc/enclosure had 7 pages, all of which were redacted at least partially).

*See* Ex.1, ¶5; *also see* ECF 18-1, pp. 73, 78, 83, 93, 100, 105, and 110 of 176; *also see* Ex. 2 (compilation of letters from FBI and OIG, with enclosures excerpted). Plaintiffs also received U.S. Department of Justice, OIG's letter dated January 22, 2026, reporting the review of 195 pages of records referred by FBI, and producing those 195 pages (171 of which were redacted at least partially). OIG's letter also included the "final" *Vaughn* index. *See* Ex. 1, ¶6; ECF 18-1, page 167 of 176; Ex. 2.

Plaintiffs' August 18, 2022 FOIA request was <u>not</u> limited to "the findings and final recommendation of charges in the investigation of FBI Special Agent ('SA') Robert Cessario," as suggested in OIG's January 22, 2026 letter. ECF 18-1, page 167 of 176; *see also* ECF 18, page 2 of 29 (FBI's brief stating that Plaintiffs submitted the FOIA request to the FBI "seeking the findings and final recommendation of charges in the investigation" Mr. Cessario). *Cf.*, ECF 2-1, p. 3 of 4, and ECF 2, ¶8 (providing complete FOIA request content).

Plaintiffs acknowledge that FBI's final *Vaughn* index logs 1,211 pages Bates labeled FBI(24-cv-5145)-00001 through FBI(24-cv-5145)-01211 (hereafter "FBI-1" through "FBI-1211"). ECF 18-1, pp. 117-148 of 176. Plaintiffs further acknowledge receipt of all but 63 "withheld" pages referenced in the *Vaughn* index, including 816 pages without redactions and 332 pages with redactions. Ex. 1, ¶11. But, in the 7 letters sent by FBI and 1 sent by OIG, there is reference to 901 pages of documents being withheld.[1]

Of the 816 Bates labeled pages produced without redactions by FBI, 734 pages are the transcript of the January 25, 2018 "Evidentiary Hearing" before this Court in *United States v.*

---

[1] In full disclosure: since filing its briefing, FBI has explained that the 7 letters from FBI and 1 from OIG are "moments in time" and not the entirety of the production over time. Nevertheless, there still appears to be a discrepancy between the counts of pages "not released" in the letters and the *Vaughn* index.

*Woods*, case number 5:17-CR-50010 (Bates FBI-71 – FBI-804). Ex. 1, ¶7. (Separate plaintiff Doug Thompson covered that hearing in his professional capacity as a journalist-reporter.) Another 31 of the 816 unredacted pages are coversheets. Ex. 1, ¶8.

Of the 332 pages produced with redactions by FBI, 29 pages are a copy of the Memorandum Opinion issued by this Court on March 2, 2018 in *United States v. Woods*. Ex. 1, ¶9. This is a published Memorandum Opinion, and it can be obtained from the court clerk or even accessed online at no cost. *Id*.

A. FBI Has Violated The FOIA, and FBI Is Not Entitled To Summary Judgment

FBI has violated the FOIA. FBI is therefore not entitled to summary judgment finding otherwise. Fed. R. Civ. P. 56(a).

In response to the August 18, 2022 FOIA request, FBI failed, as required, to make a "determination" to the request within 20 working days (or 30 working days in "unusual circumstances"). *Citizens for Resp. and Ethics in Washington v. Fed. Election Comm'n.*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW*") (*citing* 5 U.S.C. § 552 (a)(6)(A)(i)). "[I]n order to make [this] 'determination'…the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188.

Here, despite admitting that Plaintiffs, on August 18, 2022, "submitted a FOIA request to the FBI," FBI did not even respond to the request until October 14, 2022 and then denied the request entirely on October 17, 2022. ECF 2, ¶¶9-10; ECF 18-1, ¶¶6-8. This is not disputed, and this was untimely.

And FBI's violation of the FOIA continued. FBI first denied that any responsive materials could be released, claiming the request did not demonstrate "that the public's interest in disclosure…outweigh the personal privacy interests of" of Mr. Cessario. ECF 2-3, p. 1 of 4. FBI's stated rationale for originally refusing to produce responsive materials was patently unsupportable. *See e.g.*, ECF 13, p. 8 of 36, ll. 14-22 (Court's explaining that "invasion of Mr. Cessario's privacy" would be weighed against "the backdrop of sworn public testimony by Agent Cessario as to the reasons he did what he did after the Court confirming that he understood his Fifth Amendment rights").

Finally, after reversing its opinion, the intervention of a U.S. senator, and the filing of the instant action, FBI first produced records to Plaintiffs by letter dated January 31, 2025 – more than 29 months after the request was made. FBI's first, partial, late production of responsive pages also violated FOIA. *See e.g.*, *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i).")

In sum, FBI has violated the FOIA, and consequently its summary judgment motion should be denied.[2]

      B.      <u>FBI Has Not Complied With The CMO</u>

Pursuant to the CMO, in addition to making monthly productions and delivering a *Vaughn* index by March 31, 2025, FBI was directed to "provide Plaintiffs with categorical descriptions of

---

[2] Plaintiffs expect to file a cross-motion for summary judgment on this issue prior to the April 14, 2026 dispositive motions deadline.

the remaining roughly 2,500 pages of documents in the broader set of potentially responsive materials." ECF 11, p. 2 of 2. This has not been done.

In its summary judgment briefing, FBI concludes by claiming: "FBI performed an adequate and reasonable search for the requested records. Records responsive…were located. Responsive records were released…except where records, or portions of records, were exempt….The FBI has fully discharged its obligations under the FOIA…." ECF 18, p. 28 of 29.

FBI's position today is far from its stated position at the Case Management Hearing. Then, FBI acknowledged that there were another approximately 2,500 pages of documents beyond the 1,200 that supposedly "tell the story about what the FBI did to investigate this agent and what it did to discipline this agent". ECF 13, p. 16 of 36, ll. 2-7. FBI went on affirmatively to state: "We're not cutting them off at the knees at those 1,200. **That's our starting point** and we're hoping that that's the correct subset of documents." ECF 13, p. 32 of 36, ll. 2-15 (emphasis added).

In fact, and in spite of the CMO's directive that FBI make an accounting of the additional 2,500 pages of documents (to say nothing of the 32,471 pages referenced in FBI's May 2, 2024 letter), FBI is attempting to cut Plaintiffs "off at the knees" with these 1,211 documents (of which 63 were not produced and 734 are the transcript of a hearing in this court, 31 are cover sheets, and 29 are a copy of a public Memorandum Opinion entered by this Court). What is left in FBI's production to date, after more than 3 years, does not provide a response to the four descriptions of documents sought by Plaintiffs: (i) findings and final recommendations of charges in the investigation of, (ii) disciplinary action taken against, (iii) last date of employment of, and (iv) whether a pension is drawn by, Mr. Cessario.[3]

---

[3] The pages Bates labeled FBI-1169 – FBI-1172 are a redacted letter from FBI to Mr. Cessario, dated August 11, 2020. As discussed *infra*, fn. 4, the letter notifies Mr. Cessario he is being

Respectfully, to satisfy its burden of conducting a good faith search, *Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989), FBI should at least submit the 1,211 pages, unredacted, to the Court for an *in camera* review and provide satisfactory categorical descriptions of the remaining roughly 2,500 pages of documents FBI referenced at the Case Management Hearing. 5 U.S.C. § 552(a)(4)(B) (authorizing Court to examine agency records *in camera*). Without satisfying these obligations, FBI's summary judgment request is both improper and premature.

C.     FBI Exemptions Have Been Questionably Applied

FBI erroneously contends that its *Vaughn* index supports an award of summary judgment, arguing its accompanying declarations show FBI "properly and judiciously applied FOIA Exemptions 5, 6, 7(C), and 7(E), or documents remained sealed pursuant to Court Order". ECF 18, p. 13 of 29. A sampling of the pages produced demonstrates that FBI's confidence in its efforts is misplaced.

According to its *Vaughn* index, FBI applied "Exemption 5," *i.e.*, the exemption based upon 5 U.S.C. §552(b)(5), to ten of the Bates-labeled pages produced: FBI-01141, FBI-01161, FBI-01165, FBI-01166, FBI-01167, FBI-01168, FBI-01169, FBI- 01192, FBI-01193, and FBI-01194. ECF 18-1, pp. 146-147 of 176. FBI states this Exemption 5 "invoke[s] the deliberative-process privilege". ECF 18, p. 13 of 29.

The last 4 of the ten pages to which FBI applies Exemption 5 is an August 11, 2020 letter from FBI to Mr. Cessario. The letter as produced by FBI pursuant to the FOIA request begins:

---

dismissed from the rolls of FBI. Unknown, however, is whether or when this decision became final. Plaintiffs still do not know Mr. Cessario's last date of employment with FBI.



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D.C. 20535-0001

August 11, 2020

PERSONAL

Mr. Robert F. Cessario
Federal Bureau of Investigation
Little Rock, Arkansas

Dear Mr. Cessario:

On November 20, 2019, the Office of Professional Responsibility (OPR) proposed dismissing you from the rolls of the FBI based on its finding that you: (1) failed to safeguard and control access to your government-issued laptop computer when you: a) allowed your children to use the computer to download and play games; and (b) allowed a private vendor to access the computer for the purpose of wiping its hard drive, in violation of FBI Offense Code 5.17 (Security Violation - Failure to Secure Space, Sensitive Equipment/Materials); (2) failed to properly store and safeguard the recordings stored on your laptop when you had the laptop professionally wiped and then personally wiped it again, in violation of FBI Offense Code 1.6 (Investigative Deficiency - Improper Handling of Document(s) or Property in the Care, Custody, or Control of the Government);[1] (3) engaged in conduct that dishonored, disgraced, and discredited the FBI during a criminal case when, after receiving a request from a federal prosecutor to turn over the laptop for imaging, you twice wiped the hard drive of the laptop, in violation of FBI Offense Code 1.7 (Investigative Deficiency - Misconduct Related to Judicial Proceedings); (4) lacked candor not under oath, when you: a) delivered your laptop to be imaged without telling the FBI forensic examiner that the computer had twice been wiped; and b) told federal prosecutors and the examiner that you had wiped the laptop prior to the prosecutor's request to have it imaged when you actually wiped the laptop only after the prosecutor's request, in violation of FBI Offense Code 2.5 (Lack of Candor – No Oath);[2] and

b5 -1
b6 -0
b7C -0

---

[1] I use the term "wipe" because it is the term used in the Court's published opinion and in the supporting testimony. Magazine #1's dictionary defines wipe as "[a] security measure when selling, giving away or retiring a computer. A file wipe completely erases the data from the hard disk." It goes on to contrast wiping with merely erasing, a process which only marks a file as deleted but does not physically remove it from the computer's magnetic storage system. It further notes that data that has not been wiped may be forensically recovered.

[2] In the proposal letter, you were also alleged to have told federal prosecutors that you could not recall the meaning of e-mails stored on your FBI mobile phone. However, due to evidence provided during the oral hearing, I do not believe this allegation can be proven by a preponderance of the evidence.

FBI(24-cv-5145)-1169

Considering this was a letter written to Mr. Cessario, FBI's arguing that any of the contents is entitled to a "deliberative-process privilege" is dubious. The letter is marked "PERSONAL," but not "CONFIDENTIAL".[4] It seems unlikely that any portions of this letter include exempted "deliberations integral to reaching final agency decisions," when the contents were shared with Mr. Cessario. ECF 18, p. 15 of 29.

---

[4] While the letter includes a footnote admonishing Mr. Cessario "not to discuss this matter with anyone other than" certain listed categories of groups or persons, the admonishment certainly did not apply to FBI's response to an FOIA request. Also, the letter notifies Mr. Cessario that he is being "dismiss[ed] from the rolls of the FBI." It is not clear if this decision was appealed or if or when it became final. Mr. Cessario was not sentenced until more than two years later.

FBI also produced a partially redacted "Report of Investigation" dated November 19, 2019. Ex. 2 (FBI-1141 – FBI-1168). FBI withheld portions of this Report on grounds of Exemption 5, Exemption 6, Exemption 7(C), and Exemption 7(E). ECF 18-1, p. 146 of 176. A portion of the production of these pages is:

**Cessario Tells ⬚ The Laptop Was Wiped Multiple Times in 2016-2017**

In his testimony at the evidentiary hearing, ⬚ described speaking with Cessario on the morning of December 5, 2017:

b6 -1 per FBI and EOUSA
b7C -1 per FBI and EOUSA

LAWYER:  When is the next time that you spoke with Special Agent Cessario?

⬚  On the morning of December 5th.

LAWYER:  And what was that phone conversation about?

⬚  It was about basically the U.S. Attorney ⬚ had requested that he bring the laptop down to Little Rock for me to examine and so I wanted to discuss that. And basically he discussed that he . . . had wiped it or erased it multiple times -- I guess since November 2016.

LAWYER:  Did he tell you at that time if he had notified [the] U.S. Attorney's Office of this?

⬚  I don't recall that, no.

LAWYER:  Well, in response to what he told you about having wiped his computer multiple times, what did you tell him?

b6 per EOUSA
b7C per EOUSA

⬚  I told him I didn't really see any reason to examine it if he had done that because I wouldn't be able to recover any artifacts from it.

LAWYER:  What did he say to that?

⬚  I believe something to the effect, you know, he wasn't going to bring -- didn't see any reason to bring it down; and I said, "Well, you need to talk to the U.S. attorneys about that."

7

FBI(24-cv-5145)-1147

LAWYER:  So when was the next contact that you had with Special Agent Cessario following the 5th?

⬚  It was on the morning of December 7th.

b6 per EOUSA
b7C per EOUSA

But the redactions on FBI-1147 and FBI-1148 relates to testimony which is part of the evidentiary hearing transcript that FBI produced *in toto*, and unredacted, as FBI-71 through FBI-804. *See* ECF 18-1, pp. 120-135 of 176; also, FBI-634, ln. 18 – FBI-635, Ln. 19 (testimony

12

unredacted).[5] Similarly, FBI-1149 includes redactions in the Report that are <u>not</u> included on FBI-637, ll. 2-9.

FBI also produced a redacted "Memorandum of Investigation" dated March 12, 2018. ECF 18-1, page 120 of 176; Ex. 2 (FBI-69 – FBI-70). The Memorandum includes several redactions (based on Exemption 6 and Exemption 7(C)), as follows:

In the courtroom testimony, on January 25, 2018, witness [redacted] Chief Division Counsel, FBI in Little Rock, Arkansas, testified that he had reviewed Cessario's official personnel and administrative file. [redacted] testified that the file contained neither exculpatory, nor impeachment information subject to discovery under Brady versus Maryland, 373 U.S. 83 (1963); see Attachment 1, page 21, lines 6 through 12.                                                                    b6 -1
                                                                                                                          b7C -1

In the courtroom testimony, on January 25, 2018, Cessario testified that he had connected the FBI-owned undercover laptop computer to his personal e-mail account; see Attachment 1, page 167, lines 15 through 17. Cessario further testified that he wiped his FBI-owned laptop computer because he "had some very sensitive and serious personal medical records on it that he did not want to be made a record and then, in turn, turned over to the media or let out;" see Attachment 1, page 182, lines 12-16.

During an in camera session, on January 25, 2018, Cessario testified that medical records that he thought had been on the FBI-owned laptop computer contained information about a medical condition wherein [redacted]

Cessario further testified that [redacted]                                                 b6 -0
[redacted]                                                                                       b7C -0 as what
Cessario testified to as he was very sensitive about and that he had wiped his laptop OTHER SEALED PER COURT ORDER release these records; see [redacted]                                       Cessario testified that these
medical records were on the FBI- owned laptop because [redacted]

Cessario testified that [redacted]

SENSITIVE BUT UNCLASSIFIED
PERSONAL IDENTIFIABLE INFORMATION

| Special Agent Name and Signature: | Date: | Reviewer: | |
|---|---|---|---|
| | March 12, 2018 | | b6 per OIG<br>b7C per OIG |

OIG Form III-207/2 (04/23/2007) This document contains neither recommendations nor conclusions of the IG. It is the property of the IG and is loaned to your agency; it and its contents are not to be distributed outside of your agency.

FBI(24-cv-5145)-69

During courtroom testimony on January 25, 2018, Cessario testified that he paid Ozark Computer Center $50 cash to wipe the computer on December 4, 2017 and then on December 7, 2017, he erased the hard drive again, just to be safe; see Attachment 1, page 230-233. Cessario testified that he had told the U.S. Attorney's office that he had previously wiped the laptop because he needed to create space due to the storage being full in the summer of 2017; see Attachment 1, page 234, lines 2 through 25. Cessario further testified that "in early '17 there were some malware pop-up ads that were showing up every now and then," referring to his FBI owned computer, and he "deleted the internet history and they went away." Cessario also testified that "there was discussion about my divorce and my divorce attorney and how I may have been involved somehow in some conspiracy to do something to harm this case" see Attachment 1, page 235, lines 4 through 18. In testimony, Cessario stated that "the only reason that computer was used was because I could not access Dropbox with my work computer because it's a blocked site. So I had to find another way to get to Dropbox and that was the only way I could get it;" see Attachment 1, page 237, lines 10-14.

During this courtroom testimony on January 25, 2018, Cessario admitted that he had told Computer Forensic Examiner [redacted] "to create a report that says there's nothing on the computer;" see     b6 -1
Attachment 1, page 240, lines 17-24. Cessario also admitted taking the FBI computer to Ozark           b7C -1
Computer Center and telling them to wipe the hard drive; see page 265, lines 14-25. Cessario testified
that on December 6 or 7, 2017, he attempted to wipe the computer at his residence; see Attachment 1,
page 267, lines 1-21. Cessario testified that on December 4, 2017, he received an e-mail from AUSA       b6 -5
[redacted] telling him to have his computer "scanned," and that is when he decided to take the          b7C -5
computer to Ozark Computer Center and have it wiped, he further testified that he did not inform AUSA
[redacted] that he was having the computer wiped; see Attachment 1, pages 292-293. In this e-mail AUSA
[redacted] told Cessario to have someone else deliver the computer to the Computer Lab in Little Rock, but
Cessario delivered it himself; see Attachment 1, page 294, lines 1-25.

---

[5] There is a non-material transcription error in the Report. FBI-1148. A word ("December") was spoken in the testimony, as reflected in the transcript, but omitted in the Report.

13

These redactions are of testimony contained in the evidentiary hearing transcript that FBI produced *in toto*, and unredacted, as FBI-612, ll. 1-14; FBI-309, ln. 21; FBI-362, ll. 14-15; FBI-362 – FBI-364.

In sum, the above are instances in which FBI has produced redacted pages, applying exemptions under the FOIA, and inconsistently also produced unredacted pages of the supposedly "exempt" information. Surely, this calls into question whether FBI "properly and judiciously applied" exemptions on other pages.

In its briefing, FBI advocates that, to meet its burden of establishing the applicability of an exemption, it must produce a *Vaughn* index designed "to permit[] adequate adversary testing of the agency's claimed right to an exemption". ECF 18, p. 12 of 29 (*citing Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986)). But consider the 43 pages withheld by FBI due to "Sealed court transcript". ECF 18-1, p. 136 of 176; Ex. 2 (FBI-806 – FBI-848). FBI provides no description of the types of records withheld, the order requiring them to be sealed, or even the court that entered the order to seal. Plaintiffs cannot test FBI's right to withhold these documents based on this scant information. ECF 18-1, pp. 37-38 of 176, ¶79 (in FBI's declaration, reference is made to FBI-69 and FBI-1151 – FBI-1156 also being withheld due to a "sealing order"; however, the *Vaughn* index does not support this claim). ECF 18-1, pp. 120, 146 of 176.

Some final examples of FBI's production, and redactions, being an impediment to Plaintiffs' ability to test the right to an exemption: In its *Vaughn* index, FBI references 16 pages consisting of "Bentonville Police Department Detail dated July 20, 2018". ECF 18-1, p. 144 of 176; Ex. 2 (FBI-1067 – FBI-1082). FBI states that the pages are being "released in part" and

applies Exemptions 6 and 7(c). *Id*. Here is what each of those 16 pages "released in part" consist of:



b6 -0,2,6
b7C -0,2,6

Page: 1 of 16

FBI(24-cv-5145)-1067

In all 16 pages, the only item "released" is the page number of the report, *e.g.,* "Page 1 of 16". It is simply not conceivable that Plaintiffs can test the application of FBI's claimed exemption to these (and most other) pages.

Similarly, 9 pages referenced in FBI's *Vaughn* index as emails sent between August 8, 2018 and August 18, 2018 – regarding "Cessario phone records" or "a FOIA request" or "between two third party individuals" – are fully redacted. ECF 18-1, p. 144 of 176 (referencing FBI-1084 – FBI-1093). Another 34 pages described on the *Vaughn* index as "Transcript of interview of third party by law enforcement personnel" are likewise fully redacted. ECF 18-1, p. 145 of 176 (referencing FBI-1096 – FBI-1129). And there are others.

15

Put simply, there is no method to test FBI's exemption claims when the page produced looks like this:



FBI(24-cv-5145)-1086

FBI has questionably applied exemptions and has applied exemptions without providing Plaintiffs an appropriate opportunity to evaluate FBI's claims. In considering summary judgment, the "underlying facts, and the inferences to be drawn from them, are to be construed in the light most favorable to the FOIA requester." *Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989) (internal citation omitted). Here, the facts and inferences to be drawn from them are FBI has applied exemptions and responded to Plaintiffs' FOIA request unsatisfactorily.

As a consequence, FBI has not provided sufficient support for any summary judgment ruling.

**III.    Conclusion**

FBI has violated the FOIA. At this juncture, FBI should respond to Plaintiffs' August 18, 2022 FOIA request and provide records regarding the findings and final recommendation of charges in the investigation of Mr. Cessario; any disciplinary action taken against Cessario; when Cessario left the employment of the FBI; and, whether Mr. Cessario draws a pension from the FBI.

Also, FBI should produce for *in camera* review all 1,211 pages "processed" and referenced in its *Vaughn* index. 5 U.S.C. § 552(a)(4)(B).

FBI should also provide an accounting of how it reduced the "processed" records to 1,211 from the approximate 3700 referenced at the Case Management Hearing – by providing information regarding the "roughly 2,500 pages of documents in the broader set of potentially responsive materials," as directed in the CMO. FBI should also be prepared to explain how the 32,471 pages of potentially responsive records identified in May 2024 were reduced to approximately 3,700 by November 2024.

In the meantime, because FBI cannot establish its entitlement to summary judgment on Plaintiffs' claims that FBI violated the FOIA, Plaintiffs' respectfully request FBI's motion be denied in its entirety.

WHEREFORE, plaintiffs, Doug Thompson and Lisa Thompson, respectfully request that defendant FBI's motion for summary judgment (ECF 17) be denied.

Dated: March 17, 2026

<div style="margin-left:45%">

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com

John E. Tull III (Ark. Bar No. 84150)

</div>

-and-

QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
Facsimile: (479) 444-6647
E-Mail: vchadick@qgtlaw.com

By: /s/ Vincent O. Chadick
    Vincent Chadick (Ark. Bar No. 94075)

*Attorneys for Plaintiffs*