IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN ARKANSAS

| | |
|---|---|
| DOUG THOMPSON and LISA THOMPSON<br><br>*Plaintiffs,*<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>*Defendant.* | Civil Action No.: 24-CV-5145 (TLB) |

**SECOND DECLARATION OF AMIE MARIE NAPIER**

I, Amie Marie Napier, declare as follows:

1. I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division, Federal Bureau of Investigation ("FBI"), located in Winchester, Virginia. My previous declaration in this matter, dated February 23, 2026, explained my employment history and responsibilities at the FBI. *See* Dkt. No. 18-1 (hereafter referred to as "First Napier Declaration"). This declaration supplements, and hereby incorporates by reference, the information previously provided in the First Napier Declaration and is submitted in further support of the Defendant's Motion for Summary Judgment and to address the issues raised in the Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment dated March 17, 2026. *See* Dkt. No. 27 (hereafter referred to as "Plaintiffs' Opposition").

2. The background of this matter is set forth in the First Napier Declaration and will not be fully recounted. Only information directly relevant to Plaintiffs' Opposition is discussed

herein. This supplemental declaration addresses Plaintiffs' claims individually. Part I of this declaration addresses the FBI's search for responsive documents. Part II discusses FBI's offer to the court of *in camera* review of the material provided to Plaintiff. Part III addresses the FOIA process, the FBI's initial response to Plaintiff's request, the remand from the Office of Information Policy ("OIP"), and the FBI's actions following the remand. Part IV further explains the number of pages processed, withheld in full, and ultimately released to Plaintiffs. Part V discusses the categorical Vaughn as ordered by the court and the FBI supplying same to Plaintiffs. Part VI explains the deliberative process privilege and the FBI's assertion of Exemption (b)(5) in the released documents. Part VII addresses Plaintiffs' claim that the FBI inconsistently processed information. Part VIII explains the FBI's procedure when encountering sealed documents. Part IX addresses Plaintiffs' opposition to the withholding of local police reports. Part X sets forth the guidelines for expedited processing and how they apply to Plaintiffs' request for same.

**PART I: THE FBI'S SEARCH FOR RESPONSIVE DOCUMENTS**

3. As more fully described in the First Napier Declaration at ¶¶ 27-33, in response to Plaintiffs' request for specific records regarding Robert Cessario (Mr. Cessario), the FBI conducted a search for main entries in the Sentinel indices via Sentinel's search function using the term "Robert Cessario" to obtain the most comprehensive response. The FBI did not narrow or limit the search and located approximately 32,471 potentially responsive pages as a result of this search.

4. RIDS' negotiation team[1] initiated email correspondence with Plaintiffs on April 10, 2024, and advised Plaintiffs it located approximately 32,471 total pages, the cost associated with processing those pages, and the estimated amount of time needed to process those pages based upon the FBI's processing rate, at the time, of 500 pages per month. The FBI and Mr. Thompson corresponded via emails through June 4, 2024, but negotiation efforts were unsuccessful and the FBI proceeded with its standard FOIPA operating procedure.

5. The FBI manually scoped the documents that were responsive to that broad search to identify and process only those documents responsive to Plaintiffs' FOIA request for four categories of documents: (1) the findings and final recommendations of charges in the investigation of FBI Special Agent Robert Cessario; (2) a copy of records showing any disciplinary action taken against Mr. Cessario; (3) records reflecting when Mr. Cessario left the FBI; and (4) if Mr. Cessario draws a pension from his service with the FBI.

6. Of the 32,471 pages identified in the search, 2,754 pages were eliminated as duplicates. Additionally, as represented on the categorical Vaughn index provided to Plaintiffs on March 28, 2026, the FBI determined that 25,901 pages consisted of documents that were not responsive to the FOIA request at issue.[2] The FBI manually scoped the remaining 3,816 pages for responsiveness to the specific four categories of documents listed in ¶ 5 *supra*, and it processed 1,211pages as responsive[3] to those categories, to include an Office of Professional

---

[1] RIDS' FOIPA negotiation team's function is to reach out to FOIPA requesters whose requests result in a larger number of pages to determine if the request can be narrowed, in order to reduce the number of pages to be processed and the amount of time needed for processing.

[2] Although these 25,901 pages did mention Mr. Cessario, the majority of the pages contained information from a data dump of Mr. Cessario's FBI phone/emails and were about other, unrelated, cases he was working as an FBI Special Agent.

[3] Although all 3,816 pages contain information about Mr. Cessario, only 1,211 of them were related to the charges against him, disciplinary actions taken against him, his separation date from the FBI, or any possible pension, as sought by the request.

Responsibility ("OPR") report regarding Mr. Cessario, his dismissal letter, an Office of the Inspector General report with exhibits, the closing Electronic Communication for Mr. Cessario's investigative file, and Mr. Cessario's Human Resources report.

**PART II*: IN CAMERA* REVIEW**

7. In Plaintiffs' Opposition at page 2, ¶ 2, Plaintiffs indicate that the FBI has not agreed to an *in camera* review of the 1,211 pages. In the First Napier Declaration at Fn.10, the FBI offered the Court the opportunity to review the records *in camera*, if needed, after evaluating and weighing the motions before the court.

**PART III: FOIPA PROCESS**
**IMD INITIAL RESPONSE AND REMAND**

8. The FBI initial response to Plaintiffs' request was a categorical denial pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). It is not uncommon for the FBI to receive requests for individuals without an accompanying privacy waiver—signed by the subject of the request—allowing the requester access to any of the subject's personal information that may be contained in FBI documents. A categorical denial of private information is standard practice in these situations. The FOIPA process allows the requester to file an administrative appeal if they are in disagreement with the findings of the agency. In this case, Plaintiffs did just that. The appeal was then investigated by the Department of Justice's OIP. OIP was aware of a press release regarding Mr. Cessario's criminal charges, which diminished Mr. Cessario's privacy interests, and therefore, OIP not uphold the FBI's categorical denial of records. It then remanded the request back to the FBI to conduct a search for responsive records. A remand to search for records does not guarantee that documents would be found, or that they could be produced; it only states that a search should be conducted. It was through this search that the FBI located the 32,471 potentially responsive records previously mentioned. Meaning, the FBI located these results in response to

its search for "Robert Cessario", but it did not mean they would necessarily be responsive to the Plaintiffs' specific categories of interest.

**PART IV: CLARIFICATION OF THE NUMBER OF RELEASED PAGES AND WITHHELD IN FULL PAGES**

9. As previously stated, the FBI processed 1,211 pages in response to Plaintiffs' request, as illustrated in the Vaughn index provided to Plaintiffs as an exhibit to the First Napier Declaration. It is not uncommon to locate information and interests of other government agencies ("OGA"s) within FBI files, as was the case here. Of the 1,211 responsive pages, the FBI consulted 1,197 pages to the Office of Inspector General ("OIG"). Of those 1,197 pages, 57 pages were also consulted to the Executive Office for the United States Attorney ("EOUSA"), for a total of 1,197 consulted pages. All 1,197 pages were consulted during the first month of processing in order to give the OGAs the maximum amount of time to respond. The remaining 14 pages, Bates 1198-1211, did not require consulting with another agency and were processed and released to Plaintiffs.

10. The FBI reviewed 500 pages per interim release. The first interim release letter stated that 500 pages (Bates 1-500) had been reviewed and no pages were released. The letter also indicated that the FBI was consulting with OGAs and the FBI would correspond with Plaintiffs when the consultation was completed. A deleted page information sheet was included with this release to show Plaintiffs that all 500 pages had been referred to OGAs and would be processed after the OGAs had the opportunity to review them and provide feedback.

11. During the month between the first interim release and the second interim release, some of the pages consulted to OGAs were returned to the FBI. Out of the 500 pages consulted out during the first release, 477 pages were returned to the FBI, 4 of which were withheld in full

with FOIA exemptions. Of the 500 pages that were reviewed for the second release, 305[4] pages had been returned from the OGAs. The total, then, of pages released to Plaintiffs with the second interim release was 778 pages. For the third interim release, the final 211 pages were reviewed. Of those 211 pages, 198 pages remained with OGAs awaiting their feedback, and 14 pages, which were not consulted, were in the FBI's possession. Six of those 14 pages were released to Plaintiffs, and eight pages were withheld in full.

12. At this juncture, the first, second and third interim releases accounted for all processed pages - 500 pages reviewed for the first interim, 500 pages reviewed for the second interim, and 211 pages reviewed for the third interim - to equal the total number of processed pages of 1,211.

13. However, some of those pages still remained outstanding with OGAs, awaiting their feedback. At that point, more of the pages were returned from the OGAs. The fourth interim release contained 88 of those pages, both reviewed and released to Plaintiffs. The fifth interim release contained 89 pages, both reviewed and released to Plaintiffs, which were also OGA consults that had been returned to the FBI.

14. The FBI's August 29, 2025 letter to Plaintiffs advised that of the 1,197 pages that were originally consulted to OGAs, 195 pages would be converted to direct referrals to those OGAs, and that Plaintiffs would receive those pages directly from the OGA—in this case, the OIG. The seven pages that accompanied that letter were deleted page information sheets which show the disposition of reviewed pages that were withheld in full. These deleted page information sheets showed that 195 pages were being directly referred to an OGA for processing.

[4] In the FBI's second interim release letter dated January 31, 2025, the FBI inadvertently reported 304 pages were released, however, the correct number is 305 pages released.

15. The FBI provided Plaintiffs with a supplemental release on February 12, 2026, consisting of 7 pages (Bates 856, 1141, 1142, 1168, 1196, 1198, and 1199) which had been previously released to Plaintiffs, but in which the FBI identified an inconsistency, and therefore proactively reprocessed and re-released these pages to Plaintiffs.

16. Finally, the OIG made the final release to Plaintiffs of the last 195 pages, comprised of Bates 43-58,64-68, 849-855, 898-1012, 1015-1040, 1051-1065, 1083-1085, 1094, 1130-1134, and 1139-1140, from the 1,197 initially consulted pages.

17. Therefore, the total number of pages reviewed was 1,211, the total number of pages withheld in full was 63, the total number of pages released in part was 332, and the total number of pages released in full was 816.

**PART V: CATEGORICAL VAUGHN OF UNPROCESSED PAGES**

18. Per the Court's case management order, dated November 26, 2024, the FBI was ordered to provide Plaintiffs with categorical descriptions of the broader set of documents, outside of the 1,211 documents processed for, and specifically responsive to, Plaintiffs' request. The FBI, by Counsel, provided this document via email dated March 28, 2025, to Plaintiffs' Counsel of Record. (Ex. A.) The email explained that the document contained the overall descriptive categories of the pages, not responsive to and not processed for Plaintiffs' specific request, and that the majority of that information was from a data dump of communications relating to other, unrelated cases that Mr. Cessario had been investigating.

**PART VI: DELIBERATIVE PROCESS PRIVILEGE**

19. As stated in the First Napier Declaration at ¶ 44, Exemption (b)(5), specifically deliberative process privilege, (b)(5)(1), protects the internal deliberations of the government, to include opinions, discussions, and decision making. The FBI withheld certain portions of

information on Bates 1141, 1161, 1169, 1192, 1193, and 1194 pursuant to the deliberative process privilege under Exemption 5, as these portions contained information that the FBI had considered or were contemplating in its deliberations and decisions with regard to Mr. Cessario's OPR case. Clearly, Mr. Cessario was aware of the nature of his own OPR case, and it would not be unusual for those facts to be included in a letter from the FBI to Mr. Cessario. As Plaintiffs' Opposition points out, the letter is marked "PERSONAL", indicating that the letter, and its contents, were not meant for public consumption. Therefore, Exemption (b)(5) is appropriate to protect the internal deliberations included within a personal, non-public letter.

**PART VII: PLAINTIFFS' CLAIM OF PROCESSING INCONSISTENCY**

20. Plaintiffs' Opposition, pages twelve through fourteen, states that the FBI inconsistently redacted information, specifically evidentiary hearing transcripts, which Plaintiffs claim were redacted in one instance and released in another. To the contrary, redactions on FBI Bates-stamped pages 1147 and 1148 are not linked to testimony at FBI bates-stamped pages 71-804. Bates-stamped pages 1147 and 1148 are from an evidentiary hearing held December 5, 2017. The hearing at FBI bates-stamped pages 71-804 is from January 25, 2018. Further, the only information redacted on Bates-stamped pages 1147 and 1148 is the names and email addresses of several individuals. No substantive information was occluded.

**PART VIII: SEALED DOCUMENTS**

21. Plaintiffs' Opposition expresses confusion in the protection of documents that have been sealed by the court and how those documents are addressed in the Vaughn index.

22. Upon encountering documents bearing a sealed marking, FBI processors make every effort to locate the document(s) to determine their current status. The FBI review of

CourtLink[5] yields that Bates pages 806 through 848 are a transcript of Evidentiary Hearing III, from case number 5:17-CR-50010 (WDAR), held on January 25, 2018, in Judge Timothy Brooks' courtroom. Judge Brooks ordered the transcript sealed by order dated February 13, 2018. (Dkt. 290.) The FBI located no subsequent order from the court unsealing the document, and the FBI has no discretion to release these records.

23. Plaintiffs further express a misunderstanding of the distinction between "Seal WIF" and "OTHER SEALED per COURT". On the Vaughn index, FBI bates-stamped pages 806 through 848 are withheld in full per a sealing order, and marked as such on the Vaughn index in Column "Seal WIF" under the page disposition section. FBI Bates-stamped pages 69, 1144, 1151-1155[6], 1171, and 1179-1183 have only portions of text redacted per sealing order, as stated in the redaction block beside the material. These pages are marked on the Vaughn index in the redaction section, in the column marked "OTHER SEALED per COURT". The redacted information on these pages relates to the subject matter that is protected by the Court's seal on FBI Bates-stamped pages 806 through 848.

**PART IX: FBI BATES-STAMPED PAGES 1067 THROUGH 1082**

24. Plaintiffs' Opposition addressed the withholding of local police reports on FBI Bates-stamped pages 1067 through 1082. While these pages were gathered in the global search of documents responsive to "Robert Cessario", they are not related to the topic of Plaintiffs' FOIA request. The police report is related to an incident wherein Mr. Cessario was the victim,

[5] Courtlink is an online legal research service provided by Lexis Nexis that enables users to access federal and state court dockets, case filings, and monitor litigation activity in real time. See https://www.lexisnexis.com/courtlink

[6] The First Napier Declaration inadvertently includes Bates page 1156 in the list of documents with information withheld pursuant to a court's sealing order, however, no information on this page is withheld for this reason.

and the suspect in that incident has no relation to the FOIA that is the underlying cause of action in this litigation.

**PART X: PLAINTIFFS' EXPEDITED PROCESSING REQUEST**

25. In their August 18, 2022 request, Plaintiffs requested expedited processing, citing the following reason:

> Cessario was lead investigator in a public corruption case that resulted in the criminal convictions of six state legislators – so far. His criminal act became public knowledge after an open court hearing more than four years ago, and his act was described by the trial judge in the corruption case a(s) "reprehensible" in a court order. His act is a subject of legal appeals in those cases to this day. Full disclosure of what happened here is needed.

26. Under DOJ standards, expedited processing can be granted under the following conditions:

a. **28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."
b. **28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."
c. **28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process rights."
d. **28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."

27. The FBI determined that Plaintiffs' request for expedited processing does not articulate a compelling need or urgency for expedited processing under the statutes, therefore, Plaintiffs' request was denied.

## CONCLUSION

28. The FBI searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that additional searches would reasonably be likely to locate responsive records under the FOIA. The FBI carefully examined the documents and determined the information withheld from Plaintiffs in this case, if disclosed, would reveal statutorily protected information; would reveal privileged information; and would cause a clearly unwarranted invasion of personal privacy or could reasonably be expected to constitute an unwarranted invasion of personal privacy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A, attached hereto, is a true and correct copy.

AMIE NAPIER

Digitally signed by AMIE NAPIER
Date: 2026.04.14 12:45:29 -06'00'

Amie Marie Napier
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN ARKANSAS

| | |
|---|---|
| DOUG THOMPSON and<br>LISA THOMPSON<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION<br><br>Defendant. | Civil Action No. 24-CV-5145 |

# Exhibit A

| UNITED STATES DISTRICT COURT WESTERN DISTRICT OF ARKANSAS | |
|---|---|
| *Doug Thompson and Lisa Thompson v. FBI* | |
| 24-cv-5145-(TLB) | |
| | |
| **Categorcial Document Type** | **Document Descriptions for Remaining Approximately 25,000 Pages** |
| Electronic Mail Messages (emails) | This category consist of emails between FBI personnel, between FBI personnel and private citizens/corporations, and/or between FBI personnel and Other Government Agency (OGA) personnel. |
| Photographs | This category consist of recorded still images of surveillance activities related to investigations to which Cessario, in his official capacity as an FBI Supervisory Special Agent (SSA), was assigned. |
| Other Evidentiary Documents | This category consists of evidentiary documents gathered during the course of FBI investigations. These documents include proprietary phone log information, call log meta data, Enterprise Security Operations Center (ESOC) reports, handwritten notes, and local law enforcement reports. The information in these documents is often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts. |
| FD-302s | FD-302s are internal FBI forms in which evidence is often documented, usually as the result of FBI interviews. These documents include witness and other third party interviews relating to investigations in which Cessario was assigned. Additionally, these evidence/interview forms are often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts. |
| Federal Grand Jury Subpoenas/Subpoenaed Information | These documents consist of federal grand jury subpoenas and the documents collected as a result of these subpoenas. This information can be used as evidence in grand jury proceedings or other court proceedings. This information can also be incorporated in FBI documents that may be used to disseminate intelligence/ investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. |
| Non-Public Court Documents | These documents have been filed with a court or otherwise made part of the non-public court record. These documents include indictments, plea agreements, and proffer agreements concerning investigations to which Cessario was assigned. |
| FBI Memoranda and Letters Correspondence | These documents ordinarily consist of communications between FBI and DOJ officials or between FBI components. They serve to assist in the overall supervision of a case by summarizing pertinent details of an investigation. The letter correspondence can be used to communicate with non-FBI entities, including but not limited to, commercial businesses, and/or private citizens. |
| Evidence Logs/Chain of Custody | These documents track evidence within an investigation. |

| | |
|---|---|
| Third-Party Information | These are documents or information received from third parties who provided investigative information to the FBI relating to cases to which Cessario was assigned. These documents include drafts of state congressional documents, third-party financial printouts, scanned copies of checks, and CLEAR database reports. |
| Source Documents/Information | This is information provided to the FBI and/or law enforcement by a source. The information and/or documents may later be used as testimony or evidence in court proceedings/trials. Additionally, this information can be incorporated into other FBI documents that may be used to disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. |